Marshall Samuel Sanders

Lydia Ong Sanders

1621 Kensing Lane

Santa Ana, CA 92705-3074

Telephone: (714) 665-8012

E-mail: marshallssanders@yahoo.com


Marshall Samuel Sanders, *In Pro Per*

Lydia Ong Sanders, *In Pro Per*


# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – ORANGE COUNTY

## RONALD REAGAN FEDERAL BUILDING AND U.S. COURTHOUSE – SANTA ANA


| | |
|---|---|
| Marshall Samuel Sanders and Lydia Ong Sanders, | Case No.: **SACV 17-00673-CJC (DFMx)** |
| Plaintiffs, | The Honorable Cormac Carney presiding, |
| v. | **CLARIFICATIONS REQUESTED BY THE COURT** |
| Bank of America, et al., | |
| Defendants. | |

_____

## TO THE HONORABLE COURT AND THE HONORABLE CORMAC CARNEY, AND ALL PARTIES:

The Court gave Plaintiffs until October 2, 2017 to file in accordance with the Court's prior Order a document(s) and exhibit(s) clarifying various points Plaintiffs attempted to make in their Motion for Reconsideration. Regrettably, Plaintiffs were unable to so file, but the Court graciously extended additional time, in view of exigencies created by Defendants, notably eviction, yet even so

and in spite of this and other pressing difficulties brought on by Defendants' reckless and willful actions as noted below, clarifications are now provided to the Court to guide the Court in rendering its decision regarding reconsideration and/or other and appropriate order of the Court, either based upon the within clarifications, or *sua sponte*, on the Court's own initiative as the Court deems just and proper under the global circumstances brought to the Court's attention by Plaintiffs Marshall and Lydia Sanders against Wells Fargo Bank and Bank of America, the Bank Defendants.

On August 29, 2017, Plaintiffs were sued for unlawful detainer (see attached case summary for case no.: **30-2017-00940754-CL-UD-CJC** in the Orange County Superior Court). This has necessitated an extreme rush to find a place to live and arrange to move out of our home of over 14 years. Complicating matters is the fact that we have an adult disabled daughter, Starr, in the house and my wife, Lydia, is also disabled. She will be 80 years old and suffers from blood clots, glaucoma, diabetes, crippling arthritis, heart issues, and bouts with breast cancer, all for which medical treatment has failed. Further complicating matters is the fact that although we have earnestly tried to rent, having what cash we can muster in-hand, our prior bankruptcies nixed every chance to rent. No one will talk to us once we mention "bankruptcy," plus, the market is hot and no one needs us. All of this occurred subsequent to the Court granting the just-prior extension.

As of this writing, Sunday evening, October 1, 2017, the Sanders' have no place to live. No one will rent to us. We have now attempted to rent at least a dozen different places. Each time, prior bankruptcy and foreclosure has been a complete bar. We are hopeful but fast running out of time.

On September 6, 2017, a creditor that we listed in our Chapter 7 bankruptcy in 2010 (discharged), LBS Financial Credit Union ("LBS"), obtained a post-discharge Writ of Execution (illegal, *post-discharge*)(see attached Notice of Levy stemming from **Orange County Superior Court case no. 30-2012-00607896**). LBS levied our US Bank checking account. We were forced to close the account lest LBS get my wife's meager social security ($570), *and she is not even a party to the case*, leaving us no practical way to pay our ongoing obligations. Financial institutions are extremely strict about opening a new account for people that have declared bankruptcy. We are in that predicament.

Plaintiffs are contemplating legal action *pro se* to apprise the bankruptcy court in which LBS was listed as a creditor, that LBS has now obtained two (2) different Writs of Execution in *State Court*; caused their agents and law enforcement multiple times to attempt to obtain money or property from the Sanders' to which they are not entitled, harass, vex, and otherwise cause employees

or agents of LBS to continue to attempt to collect alleged debt or personal property dealt with through the bankruptcy. All of LBS' conduct post-bankruptcy discharge is in violation of the bankruptcy discharge. LBS has been warned by the State of California, Orange County Superior Court Judge in the case styled *LBS v. Sanders*, the very filing of the case being in and of itself a post-bankruptcy discharge violation of the bankruptcy code, that its attorney faces "jail time" for overreaching the Sanders'. The judge suggested that the Sanders' return to the bankruptcy court and apprise the judge what "creditor" LBS was doing post-bankruptcy discharge. Meanwhile, LBS appears bent on "padding" its recorded judgment from originally about $18,000.00 to now over $30,000.00 for a debt Plaintiffs argue has been discharged in bankruptcy, and that argument is based upon the filing of a Chapter 7 bankruptcy in 2010 by Plaintiff herein Marshall Sanders, which bankruptcy was discharged in February 2011, almost seven (7) years ago. At this rate, LBS, if permitted to continue to obtain post-bankruptcy discharge additional attorneys' fees, collections costs, and miscellaneous and assorted "junk" fees costs and expenses, could conceivably end up with a six (6) figure recorded judgment that the Sanders' could never pay, and that is only "if" it were a lawful judgment. Since the underlying "property" LBS alleges is theirs is a totaled automobile bought as a gift for Plaintiffs' granddaughter whose father was killed by a double tractor-trailer illegally traversing the Ortega Highway with its hairpin turns between San Juan Capistrano and Lake Elsinore when our son came around one of those turns on his motorcycle and met the portion to the big-rig taking up the entire space he needed to pass safely through, the end result was Patrick's motorcycle impacted one of the big-rig's 18 wheels, and Patrick's motorcycle "exploded" and, according to a driver in a passenger car behind the big-rig, the rider on the motorcycle rolled as if it were a toy doll over and over on down the highway, coming to rest in a deep ravine.

So, the car LBS alleges is theirs was a gift for Patrick's daughter, our granddaughter, to "help" her at a time of crisis in her life. Unfortunately, our good deed backfired. Our granddaughter totaled the car. This all occurred beginning September 1, 2005 when Patrick was killed, and still has not ended because LBS isn't done padding the obligations it believes Marshall Sanders owes LBS. Plaintiff Lydia Sanders is not in the picture in regard to LBS; even so, LBS has been pulling her credit bureau report, ostensibly to **secretly** obtain information relative to collection efforts of what can only be called a "phantom" debt with no law to support it nor property to execute on. But that has not stopped LBS from continuing to pad a judgment itself a violation of the bankruptcy in which the debt was listed. All of this is mentioned herein to apprise the Court of bankruptcy violations for

which the Sanders' alleged creditors have been discharged through bankruptcy or these same "creditors" lacked standing or are otherwise not the party entitled to enforce ("PETE") the alleged debt, or more sinisterly, claim to have "transferred" the debt to a third party and the third party claims to be a bona fide purchaser for value ("BFP").

Plaintiffs, the Sanders', urge the Court to find that Defendants, Wells Fargo Bank and Bank of America, willfully, intentionally, and with malice, went ahead anyway in spite of the Automatic Stay of bankruptcy, in defiance, disregard and contempt for the Automatic Stay, banking on the fact that they could muster any sum in damages any court could conceivably award against their banks, and foreclosed on the Sanders' home (1621 Kensing Lane, Santa Ana)(kindly see attached Trustee's Deed Upon Sale immediately below) and their *former* home  (2041 Iroquois, Tustin)(kindly see attached Trustee's Deed Upon Sale below).

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

15.00

* $ R 0 0 0 7 8 6 5 7 9 1 $ *
2015000500558 3:26 pm 09/30/15
143 Sec4 T09 F13   3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

RECORDING REQUESTED BY :

WHEN RECORDED MAIL TO :
**Wells Fargo Bank, N.A**
**3815  W Temple**
**Salt Lake City,  UT  84115**

APN: 502-081-13

NDSC File No.   :     12-20866-SP-CA
Title Order No.  :     120353682-CA-MAI

## TRUSTEE'S DEED UPON SALE

Transfer Tax : $0.00  (R&T Code 11926)
The Grantee herein **WAS** the Beneficiary
The amount of the unpaid debt was **$1,882,748.54**
The amount paid by the Grantee was **$1,882,748.54**
The property is in the city of **SANTA ANA**, County of **ORANGE**, State of **CA**.

**National Default Servicing Corporation, an Arizona Corporation**, as the duly appointed Trustee (or successor Trustee or Substituted Trustee), under a Deed of Trust referred to below, and herein called "Trustee", does hereby grant without any covenant or warranty to :

**Wells Fargo Bank, N.A., as trustee, on behalf of the holders of the Harbor View Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-1**

herein called Grantee, the following described real property situated in **ORANGE** County :

**PARCEL 1:**
**THAT PORTION OF BLOCK 14, IRVINES SUBDIVISION AS SHOWN ON A MAP RECORDED IN BOOK 1, PAGE 88 OF MISCELLANEOUS MAPS, RECORDS OF SAID COUNTY, DESCRIBED AS FOLLOWS:**

**BEGINNING AT THE MOST SOUTHERLY CORNER OF LOT 350 OF SAID BLOCK 14, SAID CORNER BEING ALSO THE INTERSECTION OF THE CENTER LINES OF LA LOMA DRIVE AND RED HILL AVENUE, AS SHOWN ON A MAP FILED IN BOOK 30, PAGE 48 OF RECORD OF SURVEYS IN THE OFFICE OF THE RECORDER OF SAID COUNTY; THENCE ALONG SAID CENTER LINE OF LA LOMA DRIVE, SOUTH 50°13'59" EAST 516.35 FEET; THENCE NORTH 39°48'03" EAST 416.52 FEET; SOUTH 53°42'59" EAST 72.51 FEET TO THE TRUE POINT OF BEGINNING; NORTH 39°48'03" EAST 241.92 FEET TO THE SOUTHWESTERLY LINE OF LOT A OF TRACT NO. 61, AS SHOWN ON A MAP THEREOF RECORDED IN BOOK 10, PAGE 5 OF MISCELLANEOUS MAPS, RECORDS OF SAID COUNTY; THENCE ALONG SAID SOUTHWESTERLY LINE; SOUTH 50°03'00" EAST 177.63 FEET TO THE MOST NORTHERLY CORNER OF THE LAND DESCRIBED IN DEED TO ELWOOD H. BEAR AND OTHERS, RECORDED MARCH 21, 1923 IN BOOK 462, PAGE 12 OF DEEDS; THENCE ALONG THE NORTHWESTERLY LINE OF THE LAND DESCRIBED IN SAID DEED, SOUTH 39°48'03" WEST 239.54 FEET TO THE MOST EASTERLY CORNER OF THE LAND DESCRIBED IN DEED**

FORWARD TAX STATEMENTS TO:
**Wells Fargo Bank, N.A**
**3815  W Temple**
**Salt Lake City, UT  84115**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLARIFICATIONS REQUESTED BY THE COURT

Page 2
Trustee's Deed Upon Sale
NDSC File No.   :        12-20866-SP-CA

TO MERTON D. BUTLER AND WIFE, RECORDED JUNE 10, 1957 IN BOOK 3935, PAGE 462 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHEASTERLY LINE OF THE LAND DESCRIBED IN SAID DEED, NORTH 53°42'59" WEST 177.96 FEET TO SAID ANGLE POINT THEREIN; THENCE NORTH 39°48'03" EAST 9.00 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 2:
A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES FOR INGRESS AND EGRESS TO AND FROM THE PROPERTY DESCRIBED IN PARCEL 1, SAID EASEMENT BEING 18 FEET IN WIDTH, OVER THAT CERTAIN PORTION OF BLOCK 14, IRVINES SUBDIVISIONS AS SHOWN ON A MAP RECORDED IN BOOK 1, PAGE 88 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE RECORDER, COUNTY OF ORANGE, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:
BEGINNING AT THE MOST SOUTHERLY CORNER OF LOT 350 OF SAID ABOVE-MENTIONED BLOCK 14, SAID CORNER BEING ALSO THE INTERSECTION OF THE CENTER LINE OF LA LOMA DRIVE AND RED HILL AVENUE; THENCE ALONG THE SOUTHEASTERLY LINE OF SAID LOT 350, NORTH 39°51'04" EAST, 30.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUING ALONG SAID SOUTHEASTERLY LINE OF SAID LOT 350, NORTH 39°51'04" EAST 132.33 FEET; THENCE LEAVING SAID SOUTHEASTERLY LINE, SOUTH 87°09'15" EAST 419.85 FEET; THENCE SOUTH 53°42'59" EAST 253.00 FEET; THENCE SOUTH 36°17'01" WEST AT RIGHT ANGLES TO SAID LAST MENTIONED COURSE; 18.00 FEET; THENCE NORTH 53°42'59" WEST AT RIGHT ANGLES TO SAID LAST MENTIONED COURSE 247.60 FEET; THENCE NORTH 87°09'15" WEST 405.47 FEET; THENCE PARALLEL WITH SAID SOUTHEASTERLY LINE OF LOT 350, SOUTH 39°51'04" WEST 123.33 FEET; THENCE NORTH 50°13'59" WEST 18.00 FEET TO THE TRUE POINT OF BEGINNING

PARCEL 3:
A NON-EXCLUSIVE RIGHT OF WAY FOR PIPE LINES TOGETHER WITH THE RIGHT TO CONVEY WATER THROUGH THE SAME AND THE RIGHT TO USE, REPAIR, MAINTAIN AND REPLACE THE EXISTING PIPE LINE AND RIGHT OF WAY FOR OTHER PUBLIC UTILITY PURPOSES, IN, OVER, ALONG AND ACROSS THE FOLLOWING DESCRIBED STRIP;
A PORTION OF BLOCK 14 OF IRVINES SUBDIVISION, AS SHOWN ON A MAP RECORDED IN BOOK 1, PAGE 88 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF THE TRACT OF LAND CONVEYED TO ELWOOD H. BEAR AND OTHER BY DEED RECORDED MARCH 21, 1923 IN BOOK 463, PAGE 12 OF DEEDS; THENCE NORTH 53°42' WEST ALONG THE SOUTHWESTERLY LINE OF SAID TRACT OF LAND, 189.73 FEET TO THE MOST WESTERLY CORNER OF SAID TRACT OF LAND; THENCE SOUTHWESTERLY TO THE MOST NORTHERLY CORNER OF THE TRACT OF LAND CONVEYED TO M. B. WELLINGTON AND WIFE, BY DEED RECORDED FEBRUARY 28, 1936 IN BOOK 809, PAGE 195 OF OFFICIAL RECORDS; THENCE SOUTH 53°42 EAST ALONG THE NORTHEASTERLY LINE OF SAID TRACT OF LAND CONVEYED TO M. B. WELLINGTON AND WIFE AND THE SOUTHEASTERLY EXTENSION THEREOF, A DISTANCE OF 189.73 FEET TO THE NORTHEASTERLY CORNER OF THE TRACT OF LAND CONVEYED TO M. B. WELLINGTON AND WIFE BY DEED RECORDED AUGUST 9, 1927 IN BOOK 77, PAGE 33 OF OFFICIAL RECORDS; THENCE NORTHEASTERLY TO THE POINT OF BEGINNING.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARIFICATIONS REQUESTED BY THE COURT

Page 3
Trustee's Deed Upon Sale
NDSC File No.   :       12-20866-SP-CA

This conveyance is made pursuant to the powers conferred upon Trustee by said Deed of Trust executed by **MARSHALL S SANDERS, AND LYDIA O SANDERS, TRUSTEES OF THE MARSHALL AND LYDIA SANDERS TRUST DATED APRIL 20, 1990** , as Trustor, recorded on **01/05/2007** as Instrument No. **2007000008779** (or Book, Page)  of the Official Records of **ORANGE** County, **CA**.

All requirements of law regarding the recording and mailing of copies of the Notice of Default and Election to Sell, the recording, mailing, posting, and publication of the Notice of Trustee's Sale have been complied with.

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **09/22/15** Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, which amount was **$1,882,748.54**.

Dated : 9/23/15                              National Default Servicing Corporation, an Arizona Corporation

                                             By: _____

                                             **Genevieve Mada, Trustee Sales Officer**

State of: Arizona
County of: Maricopa

On _____ *9-23* , 20 *15*, before me, the undersigned, a Notary Public for said State, personally appeared **Genevieve Mada** personally known to me be (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

                                             Signature _____

**JUDY QUICK**
NOTARY PUBLIC – ARIZONA
MARICOPA COUNTY
My Commission Expires
April 20, 2017

Kindly note the date of the foreclosure auction, September 22, 2015. What is not shown on the Trustee's Deed Upon Sale is the time of the day that the foreclosure auction was scheduled and more importantly, here, the time that the sale of the Sanders' home was actually harked and auctioned off. That time was approximately 4:00 P.M. Plaintiffs argue that that time is significant because it demonstrates "willful" conduct on the part of the Bank Defendants, Wells Fargo Bank and Bank of America. Following is a brief timeline of events the day of the foreclosure provided to the Court to give guidance. These events can be backed up by cell phone video of the actual foreclosure sale, witnesses, and conversations had at the time with prospective legal counsel.

Even the BAP does not have the record straight. Here are the correct facts. Knowing that the foreclosure of our home was scheduled for **noon** on September 22, 2015, my wife and I awoke around 3:00 A.M. My wife, Lydia Sanders, had in hand what she would need to file a petition for reorganization. When the bankruptcy court clerk in the federal building opened their doors, my wife and I were first in. My wife handed the clerk her petition. Since both of us were standing side-by-side at the clerk's window, my wife needing my physical support due to her debilitating conditions, both of us were instructed by the clerk to have a seat until the judge "accepted" the petition for filing. We sat down. We anxiously awaited the coming down of the petition back from the judge's chambers. We were mentally preparing for how we would approach the auctioneer across the street in front of the Orange County Superior Court where our home was scheduled to be auctioned at Noon. We sat for three hours from 9:00 A.M. until about three (3) minutes before Noon, only to learn that the judge did not sign the petition. Left with nothing to hold or stop the auction of our home, we nevertheless ran as fast as we could, which wasn't very fast, my wife being in no position to run, across the street (somewhat) from the Federal Courthouse to the Orange County Superior Court front entrance where the sale was to be harked. When we arrived the auctioneer was calling out addresses of homes to be auctioned. Ours was one of them. We informed the auctioneer that there was litigation pending in State and Federal court so as to put the party entitled to enforce on actual notice, and any BFP that might be in attendance, that we were the *bona fide* owners of the real property set to be auctioned and that the auction of our home is "hotly" contested.

The auctioneer immediately stopped what they were doing and got on their cell phone and reported to superiors what we advised the auctioneer of. The auctioneer postponed the sale only for so long as and until receiving further instructions from the foreclosure mill handling, conducting, and

CLARIFICATIONS REQUESTED BY THE COURT

in charge of the foreclosure, the law firm, McGuire Woods, being dictated to by Bank of America, and simultaneously, the law firm, Locke Lord, being dictated to by Wells Fargo Bank, and both Defendant banks using National Default Servicing Corporation as their agent, in turn directing the auctioneer. In essence Wells Fargo Bank directly, and Bank of America directly, were instructing the on-site auctioneer what to do.

Things got weird. The auctioneer, seeing that we as the homeowners were not going away, called for a "break," and asked us, for the crowd had noticeably thinned and few remained in attendance waiting for homes to be auctioned, if we would like to take a "restroom" or "food" break. We declined. Time went by, it was an extremely hot day, we were outdoors and the call of nature and of sustenance were unavoidable. Even so, we were not about to leave our position and learn later that our home had been foreclosed. All during this time, from Noon to about 4:00 P.M., the auctioneer continued to communicate via cell phone with "headquarters" and was unable to receive any order. During the time from Noon to 4:00 P.M., about four (4) hours, the auctioneer took repeated "toilet" or "food" breaks, leaving the auction and returning a while later. It seemed that the auctioneer (or those instructing the auctioneer) hoped that the Sanders would *go away* so that the sale could be had in secret. Also, through the four (4) hours, the auctioneer changed three (3) different times. The initial auctioneer was replaced by another who in turn was replaced by still another.

It appeared that no decision could be made, at least not easily or readily, and this was what was causing the delay in harking the sale of the Sanders' home. While Plaintiffs cannot say with certainty what caused the delay, the "delay" in and of itself, Plaintiffs argue, demonstrates the "willful" element that allows for the damages sought in the prayer for relief.

Surely there were issues causing the Bank Defendants to "hesitate" in foreclosing the Sanders' home. Taken alone, hesitation is deliberation, most especially where as here the auctioneer had no authority to auction the Sanders' home without a direct telephonic order to sell regardless of the consequences.

Plaintiffs thus argue that the Bank Defendants rolled the dice, anticipating that the Sanders' would go away, die, or ultimately lose any and all appeal(s), including any appeal of the just ruled on petition for reorganization Mrs. Sanders was denied, which had it been signed by the judge would have stopped the foreclosure, and lo and behold, the dice came up "snake eyes" for the Bank Defendants, for the BAP reversed the bankruptcy court whose denial of Ms. Sanders' petition greased and emboldened the Bank Defendants' decision to foreclose and thereafter evict. Consequences?

- 11 -

What consequences? When you are a bank, a federally-chartered bank like Wells Fargo Bank and Bank of America, and you can print, or cause to be printed, the means to pay any damage award that follows willful conduct, there are no consequences, at least none that "bite."

The present unlawful detainer action stems from the above-mentioned foreclosure, and thus if the foreclosure is a Stay Violation in the eyes of the law and of the Court, the ground(s) upon which the unlawful detainer is being pressed in a different court, here, State Court, is as well, infirm, and a further Stay Violation.

Plaintiff Lydia Sanders filed for reorganization on September 22, 2015 (kindly see attached Notice of Bankruptcy Case Filing)(see also, attached at the very end of this document), the United States Court of Appeals for the Ninth Circuit, Bankruptcy Appellate Panel's ("BAP") decision reversing the clearly erroneous decision of the bankruptcy court in kicking back Ms. Sanders' Petition at the clerk's window. The BAP opined that Ms. Sanders might never be able to file *any* Petition, an absolute Due Process violation if the bankruptcy court's decision were allowed to stand. Even worse though, for Ms. Sanders, in light of the totality of the facts, circumstances and perceptions relative to her and her husband, Marshall Sanders, by the particular bankruptcy court in issue and at the heart of the appeal, it may be unavoidable that Ms. Sanders will be forever barred from filing *any* Petition. What was **not** in the Opinion but was clearly in view by the BAP justices, was that Ms. Sanders could find this bankruptcy court "closed" to her on other grounds no matter what, for the prerogative of the particular judge could be exercised subjectively against her on virtually *any* basis. Indeed, this "could happen" event has in fact happened, and Ms. Sanders has now, for the second time, been forced to take her case back up to the same BAP that reversed the bankruptcy court in her first appeal, and once again, on Due Process grounds.

This Court asked for clarification as to "which" bankruptcy case Ms. Sanders filed and that she relies upon in her argument that Defendants Wells Fargo Bank and Bank of America violated Stay. Before providing that case number to the Court, permit Ms. Sanders herein to state that it was never her intention to in any way mislead the Court or withhold such information, but, regrettably, did occur and did slow down the wheels of justice when in fact, had the Court been in possession of the information (which it definitely was not), at minimum, the Court may have been able to render a decision or fashion an appropriate Order previously.

Plaintiff, Ms. Sanders, respectfully asks the Court to review and be guided by the Petition for reorganization, Chapter 11, that she filed on September 22, 2015 at 9:00 A.M., the opening time of

the bankruptcy clerk's window, which was assigned Bankruptcy Case No.: 8:15-bk-14615-TA. Note the clerk's time stamp: "**09:18 AM**" (see attached below):

United States Bankruptcy Court
Central District of California

**Notice of Bankruptcy Case Filing**

A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 11 of the United States Bankruptcy Code, entered on 09/22/2015 at 09:18 AM and filed on 09/22/2015.

**Lydia Ong Sanders**
1621 Kensing Ln
Santa Ana, CA 92705-3074
SSN / ITIN: xxx-xx-9390

The case was assigned case number 8:15-bk-14615-TA to Judge Theodor Albert.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 411 West Fourth Street, Suite 2030,, Santa Ana, CA 92701-4593.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

Kathleen J. Campbell
Clerk, U.S. Bankruptcy Court

| PACER Service Center |
| :---: |
| **Transaction Receipt** |
| 10/01/2017 12:33:43 |

CLARIFICATIONS REQUESTED BY THE COURT

| PACER Login: | MSS515115:2603078:0 | Client Code: | |
|---|---|---|---|
| Description: | Notice of Filing | Search Criteria: | 8:15-bk-14615-TA |
| Billable Pages: | 1 | Cost: | 0.10 |

While the whole world doesn't rest upon what happens in the just-cited bankruptcy case, the world of Mr. and Mrs. Sanders and their adult disabled daughter very much does.

The bankruptcy court kicked back Ms. Sanders' petition at the clerk's window (see finding contained within the BAP decision attached). Hereafter, we'll refer to this BAP decision as "BAP I," because, as with BAP I, Ms. Sanders has appealed the bankruptcy court's decision, after that court was reversed a second time, and on similar grounds as her first appeal, grounds that the three-justice panel of the BAP in their Opinion "feared" might befall Ms. Sanders again. Thus the current and second BAP appeal. That appeal, hereafter, will be referred to as BAP II.

Clarifying, BAP I was assigned case no.: 15-1344. See attached below:

**CM ECF**   Case Search   Calendar   Opinions   Orders/Judgments   XML   TXT        Logout   Help

If you view the HTMLDirect [ Full Docket ] you will be charged for 3 Pages $0.30

**General Docket**
**U. S. Bankruptcy Appellate Panel for the Ninth Circuit**

| | |
|---|---|
| **Bankruptcy Appellate Panel Docket #:** 15-1344 | **Docketed:** 10/08/2015 |
| Lydia Sanders v. UST/SA | **Termed:** 07/15/2016 |
| **Appeal From:** California Central - Santa Ana | |
| **Fee Status:** fee paid | |

**Case Type Information:**
  **1)** Bankruptcy
  **2)** Chapter 11 Non-Business
  **3)** null

**Originating Court Information:**
  **District:** 0973-8 : 8:15-bk-14615-TA
  **Trial Judge:** Theodor C. Albert, U.S. Bankruptcy Judge
  **Date Filed:** 09/22/2015

| Date Order/Judgment: | Date NOA Filed: | Date Rec'd BAP: |
|---|---|---|
| 09/22/2014 | 10/05/2015 | 10/07/2015 |

| | | |
|---|---|---|
| 05/18/2016 | 24 | Filed (ECF) Attorney Mr. Richard Lawrence Antognini, Esquire for Appellant Marshall Samuel Sanders in 15-1284, Attorney Mr. Richard Lawrence Antognini, Esquire for Appellant Lydia Ong |

– 14 –

CLARIFICATIONS REQUESTED BY THE COURT

Sanders in 15-1344's Acknowledgement of Receipt of Hearing Notice; served on 05/18/2016 email - Appellants Antognini, Sanders, Sanders; Attorney for Appellees: Beck, Chien, UST/SA. [15-1284, 15-1344] (RLA) [Entered: 05/18/2016 05:03 PM]

05/18/2016   25   Filed (ECF) Attorney Mr. Richard Lawrence Antognini, Esquire for Appellant Lydia Ong Sanders in 15-1344, Attorney Mr. Richard Lawrence Antognini, Esquire for Appellant Marshall Samuel Sanders in 15-1284's Acknowledgement of Receipt of Hearing Notice; served on 05/18/2016 email - Attorney for Appellants: Antognini, Sanders, Sanders; Attorney for Appellees: Beck, Chien, UST/SA. [15-1344, 15-1284] (RLA) [Entered: 05/18/2016 05:04 PM]

06/14/2016   26   Filed (ECF) Attorney Shiva D. Beck for Appellees Select Portfolio Servicing, Inc. and Wells Fargo Bank, N.A. in 15-1284's Acknowledgement of Receipt of Hearing Notice; served on 06/14/2016 email - Attorney for Appellees: Beck, Chien, UST/SA; US mail - Attorney for Appellants: Sanders, Sanders. [15-1284, 15-1344] (SDB) [Entered: 06/14/2016 12:47 PM]

06/23/2016   27   ARGUED AND SUBMITTED TO Faris, Kirscher and Kurtz. [15-1284, 15-1344] (FB) [Entered: 06/23/2016 12:53 PM]

06/23/2016   28   Mr. Richard Lawrence Antognini, Esquire for Appellant Marshall Samuel Sanders and Conrad V. Sison for Appellees Wells Fargo Bank, N.A. and Select Portfolio Servicing, Inc. appeared at oral argument on 06/23/2016. [15-1284, 15-1344] (FB) [Entered: 06/23/2016 12:58 PM]

07/15/2016   29   CLOSED: Case closed: Vacated and Remanded;Terminated on the merits after oral hearing;Written, Unsigned, Unpublished; Judges: Faris, Kirscher and Kurtz 07/15/2016 15-1344 Vacated and Remanded; Memorandum. (VJ) [Entered: 07/15/2016 01:47 PM]

07/15/2016   30   FILED AND ENTERED JUDGMENT. [EOD] Date: 07/15/2016. Mandate to issue: 08/05/2016. (VJ) [Entered: 07/15/2016 01:48 PM]

07/15/2016   31   Disposition and notice of entry of judgment sent to parties and Bankruptcy Clerk. (VJ) [Entered: 07/15/2016 01:59 PM]

07/15/2016   32   Letter and Disposition sent to Bankruptcy Court Judge Theodor C. Albert. (VJ) [Entered: 07/15/2016 02:03 PM]

11/21/2016   34   VACATED & REMANDED MANDATE ISSUED to Bankruptcy Court Santa Ana (SNA) and to Originating Bankruptcy Judge. (VJ) [Entered: 11/21/2016 11:19 AM]

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| BAP for the Ninth Circuit - 10/01/2017 12:50:07 | | |
| PACER Login: | MSS515115 | Client Code: | |
| Description: | Case Summary | Search Criteria: | 15-1344 |
| Billable Pages: | 1 | Cost: | 0.10 |

BAP II has been assigned case no.: 17-1201. See attached below:

CLARIFICATIONS REQUESTED BY THE COURT

**CM/ECF**    **Case Search**    **Calendar**    **Opinions**    **Orders/Judgments**    **XML**    **TXT**        **Logout**    **Help**

If you view the HTMLDirect [ **Full Docket** ] you will be charged for 1 Pages $0.10

**General Docket**
**U. S. Bankruptcy Appellate Panel for the Ninth Circuit**

**Bankruptcy Appellate Panel Docket #:** 17-1201                    **Docketed:** 07/07/2017
Lydia Sanders v. United States Trustee (SA)
**Appeal From:** California Central - Santa Ana
**Fee Status:** fee paid

**Case Type Information:**
 **1)** Bankruptcy
 **2)** Chapter 11 Non-Business
 **3)** null

**Originating Court Information:**
 **District:** 0973-8 : 8:15-bk-14615
 **Trial Judge:** Theodor C. Albert, U.S. Bankruptcy Judge
 **Date Filed:** 09/22/2015

| Date Order/Judgment: | Date NOA Filed: | Date Rec'd BAP: |
|---|---|---|
| 06/19/2017 | 07/03/2017 | 07/06/2017 |

| | | |
|---|---|---|
| 07/07/2017 | 1 | Received notice of appeal filed in Bankruptcy Court on 07/03/2017, notice of referral 07/05/17. (VJ) [Entered: 07/07/2017 02:51 PM] |
| 07/11/2017 | 2 | Notice to all parties and Bankruptcy Court RE: BAP Case number assigned: 17-1201. Sent Bankruptcy Record Request Form to Bankruptcy Court. (VJ) [Entered: 07/11/2017 01:49 PM] |
| 07/11/2017 | 3 | Sent BRIEFING ORDER & NOTICE to appellant Lydia Ong Sanders. Copies to all parties. Appellant Lydia Ong Sanders's opening brief due 08/25/2017. (VJ) [Entered: 07/11/2017 02:14 PM] |
| 07/11/2017 | 5 | Filed (ECF) Attorney Nancy S. Goldenberg for Appellee United States Trustee (SA) notice of appearance **and Non-Participation** of Nancy S. Goldenberg for Peter C. Anderson, U.S. Trustee; served on 07/11/2017 email - Attorney for Appellee: Goldenberg; US mail - Appellant Sanders. [17-1201] --[Edited 07/12/2017 by VJ] (NSG) [Entered: 07/11/2017 04:00 PM] |
| 07/26/2017 | 6 | Notice of Deficiency sent to Appellant RE: Record on appeal not filed ( lack of prosecution). Re: Response Due: 08/09/2017. cc: All parties. (VJ) [Entered: 07/26/2017 11:22 AM] |
| 07/26/2017 | 7 | Filed (at the Bk.Ct. 7/17/17) original and copies of Appellant Lydia Ong Sanders's motion to extend time for six months to file the record on appeal; served on 7/17/17. (VJ) [Entered: 07/26/2017 03:03 PM] |
| 08/01/2017 | 8 | Filed order (Clerk: sms); No later than January 8, 2018, appellant must file at the bankruptcy court a designation of the record, a statement of issues on appeal, and either order the transcript or file a statement indicating appellant will not be ordering a transcript. Appellant's brief and excerpts of record are due twenty-one days after she files her designation of record, statement of issues and transcript order or statement. ; dated: 08/01/2017. ( see attached order) (VJ) [Entered: 08/01/2017 10:42 AM] |

– 16 –

CLARIFICATIONS REQUESTED BY THE COURT

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| | | | |
| BAP for the Ninth Circuit - 10/01/2017 12:58:56 | | | |
| **PACER Login:** | MSS515115 | **Client Code:** | |
| **Description:** | Case Summary | **Search Criteria:** | 17-1201 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

The cases involving Stay Violations are too numerous to mention, but a few of the more notable ones, and the ones most on point, are referenced below. Unfortunately, the facts of this case, much like most cases, are unique, and thus defy any claim of being truly "on point." Be that as it may, Plaintiffs will attempt to guide the Court with the below-cited Points and Authorities coupled with the clarifications herein. For ease of reference and simplicity, Plaintiffs could not do better than to provide the essentially brief articles containing the appropriate citations and other references than to include them right here within this document. Here, below, is the first such article:

## The Ninth Circuit Court of Appeals Finally Provides Debtor's the True Ability to Enforce Their Rights When the Automatic Stay is Violated

By Ryan C. Wood

The Ninth Circuit Court of Appeals held on October 14, 2015, see In re Schwartz-Tallard Case No. 12-60052, that debtors can recover attorneys' fees and costs reasonably incurred when seeking sanctions and damages for the willful violation of the automatic stay pursuant to Section 362(k) of the Bankruptcy Code. This is a huge decision and was badly needed. How can anyone enforce their rights if they cannot afford to hire representation and that representation cannot even recover their fees for correctly and successfully prosecuting the award of damages? They cannot and it created vast injustices for those damaged by the willful violation of the automatic stay. This holding by the Ninth Circuit Court of Appeals properly makes the party, creditors; bare the cost of their bad behavior, willfully violating the automatic stay. I previously wrote way back in December 2010 about how the backbone of the bankruptcy process is the automatic stay.

Previously debtors could only recover attorneys' fees and costs up to when the violation of the stay was remedied. Not attorneys' fees and cost associated with seeking sanctions and damages when remedying the automatic stay violation. This structure of recovery of fees was a huge problem for debtors and their bankruptcy attorneys. For some reason the system time and time again has policies that do not allow attorneys for debtors to be paid for their time when advocating on behalf of their clients. Enforcing the violation of the automatic stay used to be a prime example. A client would come to us with evidence a creditor is violating the automatic stay even though they were served with notice of the bankruptcy case. Some violations of the automatic stay are innocent and can be remedied by sending an email or letter to the creditor or their counsel. The damages are not significant.

In other circumstances creditors actually sue debtors post-discharge for a discharged debt and then refuse to dismiss the state court lawsuit. If you have ever been sued for any reason it does not feel good. Under the prior fee structure if their bankruptcy lawyer filed a motion for sanctions in bankruptcy court for

CLARIFICATIONS REQUESTED BY THE COURT

the willful violation of the automatic stay the creditor could then just seek dismissal of the state court lawsuit as soon as possible after the filing of the motion for sanctions. Then all the time and effort to seek damages for the creditor's willful violation of the automatic could not awarded to the debtor's attorney. That would include the time to appear at the hearing for sanctions and any time after the violation was cured when continuing to prove damages that in some cases are very significant. What a horrible structure. It encouraged violations of the automatic stay and discouraged debtors from enforcing their rights for the violation of the automatic stay and seeking damages. In my opinion it went against everything filing for bankruptcy PROTECTION is supposed to be about.

Now creditors will properly weigh the consequences of their willful choice to violate the automatic stay properly given they will have to pay for the debtors attorney's fees and costs from day one to the end of the process of proving damages. There will therefore be less violations of the automatic stay and debtors can obtain the relief they originally sought when filing a petition for bankruptcy. It will also eliminate the need to litigate exactly when the violation of the automatic stay ended and how much time and money was spent by the debtor's attorney up to when the violation of the automatic stay ended. The focus can now be on the willful violation of the automatic stay that should never have happened and the resulting damages. Attorneys for debtors will also no longer fear, at least in this area of representing debtors, that they will get left holding the bag financially for properly advocating on behalf of their clients. Now if we could only get this kind of treatment in other areas of bankruptcy practice regarding the time we spend advocating for our clients there would be even more justice to be had by debtors. After all, filing for bankruptcy protection is following the law.

In the Schwartz-Tallard case the facts are actually far worse. The debtor's house was improperly foreclosed on and the debtor had to fight to get the house back. The debtor then sought sanctions and damages. The creditor in this case appealed the rulings of the lower bankruptcy court and lost. In this case the debtor's attorney could not recover all the time and money spent defending the appeals? The Ninth Circuit Court of Appeals remedied the prior strange result in the Steinberg case limiting recovery of attorneys' fees and cost to when the automatic stay violation ceased and now include recovery of attorneys' fees and cost seeking damages, including any appeals.

This entry was posted in Automatic Stay and Bankruptcy, Violation of the Order of Discharge and tagged Attorneys Fees, Damages, Sanctions, Section 362(k), Violation of Automatic Stay on October 16, 2015.

SEPTEMBER 18, 2015

# Los Angeles Court Affirms Penalties for Willful Violation of Automatic Stay in Chapter 13 Bankruptcy Case

by Devin Sawdayi

A U.S. district court in Los Angeles affirmed a bankruptcy court's order finding that a judgment creditor willfully violated

– 18 –

CLARIFICATIONS REQUESTED BY THE COURT

1   the automatic stay in a Chapter 13 case. *In re Bayley*, **No. 2:14-cv-07799, order (C.D. Cal., Jan. 14, 2015)**. The automatic stay takes effect the moment a bankruptcy petition is

2   filed. **11 U.S.C. § 362(a)**. Violations of the automatic stay may be subject to penalties by the

3   court, with greater penalties for violations found to be "willful." The present case demonstrates how a court could find that a party's violation was willful despite a claimed

4   mistake of law.

5   The creditor at issue in this decision obtained a judgment against the debtor in a Ventura

6   County court in August 2011, in an amount approaching $13,000. A lien on real property owned by the debtor in Thousand Oaks secured the judgment. The court in Ventura County

7   issued a writ of execution about two years later, and in January 2014, the Los Angeles County Sheriff's Department (LASD) served the debtor's bank with a writ of garnishment.

8   The LASD levied $4,000 from the account that February.

9   About two weeks after the levy, the debtor filed a Chapter 13 bankruptcy petition. The LASD

10  was still in possession of the $4,000 at the time. The debtor included the $4,000 in her Schedule B list of personal property, and she claimed it as exempt in Schedule C under

11  California's "wild card" exemption, **Cal. Code Civ. P. § 703.140**. She then filed a motion to

12  avoid the real property lien. The creditor did not object to the debtor's claimed exemption or her motion.

13  The bankruptcy court granted the debtor's motion, which rendered the lien unenforceable.

14  The debtor requested that the LASD return the $4,000 to her. The LASD said it could only do so if the creditor released the funds, but the creditor stated that only the trustee had the

15  authority to authorize the release. The debtor eventually filed a motion alleging intentional

16  violation of the automatic stay by the creditor.

17  After a hearing, the bankruptcy court ruled that the creditor had willfully violated the automatic stay. It ordered the creditor to pay over $4,500 in damages and directed the

18  LASD to release the funds. The creditor appealed to the district court but did not pay the

19  damages award, "apparently believ[ing] that doing so would moot its appeal." *Bayley*, order at 4. The bankruptcy court ordered it to post a $100,000 bond.

20  The district court affirmed the bankruptcy court's ruling, finding that the creditor willfully

21  violated the automatic stay. To prove that a violation of the automatic stay is "willful," a debtor must prove that the party knew about the stay and that they "intentionally act[ed] in

22  violation of it." *Bayley* at 6, citing ***Eskanos & Adler v. Leetien*, 309 F.3d 1210, 1215 (9th**

23  **Cir. 2002)**. The debtor must only prove, however, that the party intended to perform the act that violated the stay. They do not have to prove that the party "specifically intended to

24  violate the stay." *Bayley* at 6, citing ***In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992)**. The

25  district court held that Congress intended "that a debtor need not take steps to secure the benefit of the automatic stay," and therefore the creditor "had an affirmative duty" to

26  authorize the release of the funds. *Bayley* at 13. It was not persuaded by any mistake of law

27  by the creditor.

28

CLARIFICATIONS REQUESTED BY THE COURT

1

2

**Bankruptcy** attorney Devin Sawdayi has guided individuals and families in the Los Angeles area through Chapter 7 and Chapter 13 personal bankruptcy cases since 1997. To schedule a free and confidential consultation, contact us today online or at (310) 475-9399.

3

4

## What Creditors Need to Know - Two Recent Bankruptcy Rulings Affect Rights and Risks Regarding the Automatic Stay

5

**By: Paul Arrow, Esq.**
January 2016

6

7

8

9

10

11

Immediately upon the commencement of a bankruptcy case an automatic stay prohibits actions against the debtor to, among other things, collect pre-petition obligations and to obtain control over property of the bankruptcy estate.  The automatic stay furthers fundamental policy goals of providing a debtor with the "breathing space" to reorganize or otherwise address its problems, and providing an orderly process for dealing with creditor claims.  A violation of the stay can be costly, resulting in an award of actual and possibly punitive damages.  Two recent rulings of the Ninth Circuit Court of Appeals have fine-tuned the contours of the stay.  One ruling benefits creditors by limiting the application of the stay in the unlawful detainer context, at least in California.  The other increases the risk to creditors of violating the stay by expanding the measure of damages that may be recovered for a stay violation.

12

13

14

15

16

17

18

The scope automatic stay is very broad and applies to protect all legal and equitable interests of a debtor.  This includes virtually all actions against a debtor in connection with a pre-petition obligation, and actions to exercise control over property of the bankruptcy estate.  Many courts have found that the stay extends to protect even a debtor's bare possession of property  In *Eden Place, LLC v. Perl (In re Perl*), 2016 U.S. App LEXIS 246, however, the panel ruled that the stay did not apply to an action to evict the former owner of real property.  The panel found that under California law, once the creditor obtained an unlawful detainer judgment again the debtor, the debtor no longer held any legally cognizable interest in the property.  Accordingly, the stay did not apply to prohibit the eviction action.  This is good news for creditors in California that might otherwise have gone through the foreclosure and unlawful detainer process, only to be stymied by a last minute bankruptcy filing and the specter of the automatic stay.

19

20

21

22

23

Another recent ruling, however, expands the scope of damages on account of a stay violation.  Previously, in the Ninth Circuit such damages could not include attorney's fees and costs incurred in prosecuting the damages action.  The Ninth Circuit was the outlier as most other jurisdictions permitted such damages.  That has now changed.  In *America's Servicing Company v. Irene Michelle-Schwartz-Tallard (In Re Irene Michelle-Schwartz-Tallard)*, 803 F.3rd 1095 (9th Cir. 2015), the panel overruled a previous decision and brought the Ninth Circuit in line with the rest of the country.  Now, stay violators in the Ninth Circuit may be subject to the full measure of damages, including the costs of prosecuting the damages action.  This ruling serves to underscore the risk of violating the stay and the need for careful consideration of any actions following the commencement of a bankruptcy case.

24

25

26

27

28

CLARIFICATIONS REQUESTED BY THE COURT

For the Court's guidance, attached immediately below is the Trustee's Deed Upon Sale pertaining to Plaintiffs' *former* home. For purposes here it shall be called by the street name upon which the home is located, "Iroquois:"

**Branch :O25 User :SRES**

CLARIFICATIONS REQUESTED BY THE COURT

WHEN RECORDED MAIL TO:

**Oaktree Investments, Inc**
**92 Legacy Way**
**Irvine, CA  92602**

TRA# 13-152
Trust No.  **027937-CA**
Parcel No. 500-207-18
Property Address:
**2041 IROQUOIS**
**TUSTIN, CA 92782**

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

‖‖‖‖‖‖ *$R 0 0 0 9 1 3 6 6 9 1 $ * 12.00

**2017000109878** 1:24 pm 03/17/17
143 422 T09   3 13
330.28 330.27 0.00 0.00 6.00 0.00 0.00 0.00

Space Above This Line For Recorder

| MAIL TAX STATEMENT TO: | Documentary Transfer Tax **$660.55** |
|---|---|
| | The Grantee Herein **was not** the Foreclosing |
| Same as above | Beneficiary. |
| | consideration **$600,100.00** |
| | unpaid debt  **$523,083.00** |
| | **XX** Computed on the consideration or value of |
| | property conveyed. |
| | ___ Computed on the consideration of value less liens |
| | or encumbrances remaining at time of sale. |

The undersigned declare under penalty of perjury

_____
Signature of Declarant or Agent
APN  **500-207-18**

# TRUSTEE'S DEED UPON SALE

**CLEAR RECON CORP.** (herein called trustee)
does hereby grant and convey, but without covenant or warranty, express or implied to
**OAKTREE INVESTMENTS, INC** (herein called Grantee) the real property in the county of
**Orange**, State of California described as follows:

**PARCEL 1:**
**LOT 48 OF TRACT 13044, IN THE CITY OF TUSTIN, COUNTY OF ORANGE, STATE OF**
**CALIFORNIA, AS PER MAP RECORDED IN BOOK 579, PAGES 21 TO 27 INCLUSIVE, OF**
**MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID**
**COUNTY.MORE COMPLETELY DESCRIBED IN ATTACHED EXHIBIT A.**

The street address and other common designation, if any, of the real property described above is
purported to be: **2041 IROQUOIS, TUSTIN, CA 92782**

This conveyance is made pursuant to the authority and powers vested in said Trustee, as Trustee,
or Successor Trustee, or Substituted Trustee, under that certain Deed of Trust executed by

Page **1** of **2**
PNC

CRC TDUS 09042014

ORANGE, CA Document:FD 2017.109878 Page:1 of 3 Printed on:5/24/2017 12:53 PM

Branch :O25 User :SRES

CLARIFICATIONS REQUESTED BY THE COURT

TS #: **027937-CA**

**MARSHALL S SANDERS AND LYDIA O SANDERS HUSBAND AND WIFE AS JOINT TENANTS** as Trustor, recorded **6/25/2003, as Instrument No. 2003000739489**, of official Records in the Office of the Recorded of **Orange** County, California; and pursuant to the Notice of Default recorded **5/6/2016, as Instrument No. 2016000203454**, of Official Records of said County, Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by said Deed of Trust, including, among other things, as applicable, the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof.

At the place fixed in the Notice of Trustee's Sale, said Trustee did sell said property above described at public auction on **3/9/2017** to said Grantee, being the highest bidder therefore, for **$600,100.00** cash, lawful money of the United States, in satisfaction pro tanto of the indebtedness then secured by said Deed of Trust.

Date:                                          **CLEAR RECON CORP.**

        MAR 1 0 2017

                                     By: _____
                                            Tammy Laird
                                            Foreclosure Manager

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California)
County of San Diego)

On ____MAR 1 0 2017____ before me, ____S. Mesa____,
a Notary Public, personally appeared ____Tammy Laird____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of ____CALIFORNIA____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____

> S. MESA
> Commission # 2123338
> Notary Public - California
> San Diego County
> My Comm. Expires Aug 14, 2019

**MAIL TAX STATEMENTS TO THE ABOVE MENTIONED ADDRESS**

Page **2** of **2**
PNC

CRC TDUS 09042014

ORANGE, CA Document:FD 2017.109878 Page:2 of 3 Printed on:5/24/2017 12:53 PM

Branch :O25 User :SRES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLARIFICATIONS REQUESTED BY THE COURT

1
2
3
4

**EXHIBIT A**

**LEGAL DESCRIPTION**

**REF. NO. 027937-CA**

PARCEL 1:

LOT 48 OF TRACT 13044, IN THE CITY OF TUSTIN, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 579, PAGES 21 TO 27 INCLUSIVE, OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERAL AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF RECORD.

ALSO EXCEPT THEREFROM ALL WATER, WATER RIGHTS, CLAIMS OR TITLE TO WATER IN, ON OR UNDER SAID LAND.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, DRAINAGE, MAINTENANCE, REPAIR AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE AMENDED AND RESTATED DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR TUSTIN RANCH SHADOWBROOK ("DECLARATION") RECORDED DECEMBER 23, 1987 AS INSTRUMENT NO. 87-707169, OF OFFICIAL RECORDS OF ORANGE COUNTY, AND IN THAT CERTAIN NOTICE OF ADDITION OF TERRITORY AND SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR PHASE 5 OF TUSTIN RANCH SHOWBROOK ("NOTICE"), RECORDED JULY 30, 1987 AS INSTRUMENT NO. 87-433576 AND RE-RECORDED FEBRUARY 4, 1988 AS INSTRUMENT NO. 88-053008, BOTH OF SAID OFFICIAL RECORDS.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR SIDEYARD PURPOSES OVER A PORTION OF OTHER ADJOINING LOT OF SAID TRACT 13044, AS DESCRIBED IN AND LIMITED BY THE DECLARATION AND NOTICE.

# Creditors Beware-Automatic Stay Violations Can Lead to Massive Punitive Damages

By Beth L. Slaby / Aug 05, 2016

**Ohio Bankruptcy Judge Assesses $250,000 in Damages Against Mortgage Lender for Violating the Automatic Stay in Bankruptcy Proceeding**

A clerical error by a mortgage lender led to punitive damages and expensive litigation. Secured creditors should take note of this case and make sure they have internal checks and balances to avoid such problems in the future.

The Bankruptcy Code imposes an "automatic stay" of all collection activities by creditors against debtors for amounts owed pre-bankruptcy. Typically, creditors expect that an internal system and periodic consultation with outside counsel will ensure compliance with the provisions of the automatic stay and avoid potential punitive damages permissible in section 362(k) of the Bankruptcy Code. In a recent Ohio case, Bankruptcy Judge Kay Woods imposed a $250,000 punitive damage award against a mortgage lender, Nationstar Mortgage ("Nationstar") for, among other failings, filing an erroneous transfer of claim in a debtors' bankruptcy proceeding. *See In re Mocella*, 2016 Bankr. LEXIS 2472 (Bankr. N.D. Ohio June 15, 2016). This case highlights that creditors in bankruptcy proceedings must not only cease certain activities (i.e. sending "demand letters"), but must also have controls in place to verify the information and documents submitted to the Bankruptcy Courts in connection with bankruptcy proceedings. Below is a brief summary of the Nationstar case, with some suggestions to assist in safeguarding against "stay litigation" and sizeable damage awards.

**A. Background of the Nationstar Case**

In 2010, husband and wife (the "Debtors") filed a voluntary petition pursuant to chapter 13 of the Bankruptcy Code. They owed about $11,000 to GMAC on a vehicle loan that was to be paid in full during the life of their bankruptcy plan ("GMAC Claim"). They were also indebted to Nationstar on a $77,000 home mortgage and a separate $3,000 unsecured loan. In 2014, Nationstar took over servicing for several thousand mortgages from a lender with a name similar to GMAC. Nationstar mistakenly believed it had taken over servicing of the auto loan, and filed a transfer of claim ("Claim Transfer") for the Debtors' auto loan. At the bottom of each claim transfer form is the legend, "Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. *18 U.S.C. §§ 152 & 3571*." Upon filing of the Claim Transfer, the trustee erroneously made three (3) payments to Nationstar, totaling $279.72 for the Debtors' monthly auto payment obligations. In May, 2015 - more than five months after filing the Claim Transfer - Nationstar filed a notice of withdrawal of the Claim Transfer. After the withdrawal was filed, the chapter 13 Trustee sent Nationstar two letters, in May and September 2015, each requesting the return of the claim payments that Nationstar had received. However, Nationstar took no action to return the funds. Importantly, no distributions were made to GMAC for the three payments improperly diverted to Nationstar due to the erroneous Claim Transfer.

The Debtors made all payments concerning the GMAC Claim in accordance with their chapter 13 plan. But for Nationstar filing the Claim Transfer, the GMAC Claim would have been paid in full in accordance with the Debtors' chapter 13 plan. On May 7, 2015, the Debtor-Husband attempted to purchase a new vehicle, which was to include the trade-in of the vehicle secured by the GMAC Claim (the "Vehicle"). However, GMAC refused to release title to the Vehicle due to the amounts outstanding on the GMAC Claim.

**B. Stay Litigation**

CLARIFICATIONS REQUESTED BY THE COURT

The Debtors filed a motion for contempt against Nationstar in the Bankruptcy Court, alleging gross and willful violations of the automatic stay, a variety of consumer protection and state law causes of action, as well as seeking punitive damages.

On June 15, 2016, the Bankruptcy Court issued its 55-page opinion, finding (i) that Nationstar willfully violated the automatic stay and (ii) that its retention of the Debtors' claim payments was an intentional act that constituted a willful violation of the automatic stay because it was an act to exercise control over property of the estate. Despite Nationstar's allegation that it did not act with "nefarious and malevolent" intent, the Bankruptcy Court found that intent was immaterial to a finding of a willful violation of the automatic stay. The Court determined that the Debtors incurred actual damages in the amount of $17,750.00, as well as punitive damages in the amount of $250,000. As part of its reasoning, the Court noted that Nationstar took no steps to change its policies or procedures to ensure that this kind of "mistake" does not happen in the future.

Nationstar has appealed the Bankruptcy Court's decision and the appeal is currently pending in the United States District Court for the Northern District of Ohio.

**C. Conclusion**

Among the lessons to be learned here are that once a creditor becomes aware of a debtor's bankruptcy filing, it is imperative that all collection efforts and communications of any kind with the debtor cease immediately in order to prevent any violation of the automatic stay. Once a creditor is aware of the stay and acts in violation, it is possible the creditor could be assessed actual damages and, in certain cases, punitive damages. In this case, it is clear that the bankruptcy judge lost all patience for Nationstar's lack of internal checks and balances (Nationstar had also erroneously filed three (3) motions for relief from the automatic stay in the Debtors' chapter 13 proceeding based upon (i) computation of arrears that were wholly inaccurate and (ii) failure to properly process the Debtors' loan modification.)

In conclusion, all filings with the Bankruptcy Court must be verified for accuracy and legitimacy. Furthermore, corrective measures to safeguard against future systemic issues will be taken into account for purposes of calculation of damages. In this instance, a clerical misunderstanding led to expensive litigation and astronomical punitive damages. These matters can and should be avoided in the future with a few policies, systems and collaboration with outside advisors.

For questions or more information, please contact Beth Slaby at (412) 394-2486 | bslaby@clarkhill.com or another member of Clark Hill's Corporate Restructuring & Bankruptcy team.

As with the "Kensing Lane" home the Iroquois home was auctioned off with the auctioneer and the successful bidder put on **actual notice** by Plaintiffs, and by other events, and offered the documents evidencing same and showing that Plaintiffs were indeed the homeowners and also the homeowners that had brought pending litigation, filed and recorded a notice of *lis pendens*, and to which they the "creditors" were subject to the Automatic Stay. The auctioneer, with gusto, went ahead anyway and auctioned off the Sanders' home, and the "successful" bidder, likewise, with intense fervor, gladly received the auctioned home from the auctioneer.

**<u>CONCLUSION</u>**

CLARIFICATIONS REQUESTED BY THE COURT

The <u>Sundquist</u> case is about as close as an on point case can be to the Sanders' case, Plaintiffs herein. Thus the Sanders' include a hyperlink to the <u>Sundquist</u> decision here:

https://livinglies.files.wordpress.com/2017/03/sundquist-opinion1.pdf

If for any reason the link fails to open, the citation is: 566 B.R. 563 (2017).

**<u>PRAYER FOR RELIEF</u>**

1. Compensatory damages for pain and suffering caused by Defendant Banks, Wells Fargo Bank and Bank of America, for intentionally, vexatiously, knowingly and wantonly trying to "destroy" Plaintiffs Marshall and Lydia Sanders, by any means calculated to inflict the maximum psychological, emotional and mental anguish and trauma, damn the consequences.

2. Actual damages for pain and suffering caused by Defendant Banks, Wells Fargo Bank and Bank of America, for intentionally, vexatiously, knowingly and wantonly trying to "destroy" Plaintiffs Marshall and Lydia Sanders, by any means calculated to inflict the maximum psychological, emotional and mental anguish and trauma, damn the consequences.

3. Punitive, treble and exemplary damages for pain and suffering caused by Defendant Banks, Wells Fargo Bank and Bank of America, for intentionally, vexatiously, knowingly and wantonly trying to "destroy" Plaintiffs Marshall and Lydia Sanders, by any means calculated to inflict the maximum psychological, emotional and mental anguish and trauma, damn the consequences.

4. Order of the Court to Bank Defendants Wells Fargo Bank and Bank of America to reconvey title to 1621 Kensing Lane, Santa Ana, CA to the Sanders' based upon a wrongful foreclosure and that based upon a violation of the Automatic Stay of bankruptcy. A further Order of the Court that the instruments upon which Bank Defendants relied to enforce a non-judicial foreclosure were void, not voidable, based upon (i) a Stay Violation; (ii) TILA Rescission effected February 17, 2010, which under *Jesinoski v. Countrywide*, in a 9-0 United States Supreme Court decision, the Sanders' TILA Rescission letter mailed to Bank of America, Countrywide's alleged "successor," was effective by **operation of law upon mailing**, thus, because the instruments upon which the Bank Defendants relied in order to foreclose were void by operation of law, an Order of the Court expunging those instruments based upon their being both void and "wild deeds" in the Sanders' orderly chain-of-title, causing the Sanders' title to be clouded and therefore unmarketable, is appropriate (*see also*, https://livinglies.files.wordpress.com/2017/10/tila-beneficial-illinois-inc-v-parker-2016-il-app-1st160186.pdf).

CLARIFICATIONS REQUESTED BY THE COURT

5. Order of the Court to Bank Defendant Bank of America to reconvey title to 2041 Iroquois, Tustin, CA 92782-8313 back to the Sanders' based upon a wrongful foreclosure and that based upon a violation of the Automatic Stay of bankruptcy. A further Order of the Court that the instruments upon which Bank Defendants relied to enforce a non-judicial foreclosure were void, not voidable, based upon (i) a Stay Violation; (ii) TILA Rescission, which under *Jesinoski v. Countrywide*, in a 9-0 United States Supreme Court decision, was effective by **operation of law upon mailing**', thus, because the instruments upon which the Bank Defendants relied in order to foreclose were void by operation of law, an Order of the Court expunging those instruments based upon their being both void and "wild deeds" in the Sanders' orderly chain-of-title, causing the Sanders' title to be clouded and therefore unmarketable (*see also*, https://livinglies.files.wordpress.com/2017/10/tila-beneficial-illinois-inc-v-parker-2016-il-app-1st160186.pdf).

6. Court-appointment of a bankruptcy litigator with foreclosure and eviction defense experience because Plaintiffs are without funds or other resources to hire a lawyer and still eat.

7. Attorneys' fees upon appointment of a lawyer(s) as requested above.

8. Such other and appropriate relief as the Court may fashion.

Dated: October 2, 2017

_____*Signature on separately e-filed page 30.

Marshall Samuel Sanders, Plaintiff, Trustee

Of The Sanders Trust, UTD 4/20/90

_____* Signature on separately e-filed page 30.

Lydia Ong Sanders, Plaintiff, Trustee

Of The Sanders Trust, UTD 4/20/90

CLARIFICATIONS REQUESTED BY THE COURT

Immediately below is the **BAP I** decision:


## JUL 15 2016

SUSAN M. SPRAUL, CLERK U.S. BKCY. APP. PANEL OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL
        OF THE NINTH CIRCUIT

In re: ) ) LYDIA ONG SANDERS, ) ) Debtor. )
_____ ) 8) LYDIA ONG SANDERS,
) 9) Appellant, ) )

BAP No.
Bk. No.
CC-15-1344-FKiKu
8:15-bk-14615-TA
v.

) MEMORANDUM[*]

) UNITED STATES TRUSTEE,[**] ) ) Appellee. )
_____ )

Argued and Submitted on June 23, 2016 at Pasadena,
California[***]

                           Filed – July 15, 2016
            Appeal from the United States Bankruptcy
Court
                  for the Central District of California
      Honorable Theodor C. Albert, Bankruptcy Judge,
Presiding
Appearances:   Richard Lawrence Antognini argued for
Appellant
                  Lydia Ong Sanders.
[*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value

CLARIFICATIONS REQUESTED BY THE COURT

it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

[**] The United States Trustee did not file an answering brief or otherwise participate in this appeal.

[***] Oral argument in this matter was consolidated with the appeal in Sanders v. Cohen (In re Sanders), BAP No. CC-15-1284- FKiKu.

—————————  ——————————  —————————— —— ——
—————————————————————

CLARIFICATIONS REQUESTED BY THE COURT



CLARIFICATIONS REQUESTED BY THE COURT

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24 25 26 27

28

Before: FARIS, KIRSCHER, and KURTZ, Bankruptcy Judges.

## INTRODUCTION

Appellant/chapter 11[1] debtor Lydia Ong Sanders appeals the bankruptcy court's summary dismissal of her bankruptcy case at the time she filed the petition. The court did so without notice or an opportunity for a hearing, based solely on the fact that she and her husband had recently filed numerous bankruptcy petitions. We find that the bankruptcy court deprived Mrs. Sanders of due process. Accordingly, we VACATE the dismissal order and REMAND this case to the bankruptcy court.

**FACTUAL BACKGROUND**[2] Mrs. Sanders and her husband, Marshall Samuel Sanders, have

initiated a combined total of nine bankruptcy petitions since 2010. Mrs. Sanders has filed four petitions in the Central District of California, including the petition from which this appeal arises.[3]

CLARIFICATIONS REQUESTED BY THE COURT

Prior to the instant appeal, Mrs. Sanders most recently
filed a chapter 11 bankruptcy petition on October 29, 2014.  That
case was dismissed on November 19, 2014 for failure to file her

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] We have exercised our discretion to review the bankruptcy court's docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

[3] Mrs. Sanders filed a chapter 7 case in June 2010 and received a discharge in September 2010; she filed a chapter 13 case in December 2013, which was dismissed in March 2014 with a 180-day bar on refiling; and she filed a chapter 11 case in October 2014, which was dismissed in November 2014.

2

_____ __ _____ _____

CLARIFICATIONS REQUESTED BY THE COURT

CLARIFICATIONS REQUESTED BY THE COURT

1    10
2    11
     12
3    13
4    14
     15
5    16
6    17
7    18
     19
8    20
9    21
     22
10   23
11   24
12   25
     26
13   27
14   28

15   schedules, statements, or a plan.  The court did not
16   impose any
17   bar against refiling a bankruptcy petition.
          On September 22, 2015, Mrs. Sanders again
18   attempted to file
19   a chapter 11 petition.  Mrs. Sanders' filings included
     an
20   Application for Individuals to Pay the Filing Fee in
21   Installments.  Her husband filed the documents in the
22   clerk's
     office and waited to receive conformed copies.
23        The clerk returned to Mr. Sanders the Order
24   Approving
25   Payment of Filing Fee in Installments with a
     handwritten note by
26   the bankruptcy judge stating, "denied - dismiss w.
27   180-day bar.
28   This debtor and husband have filed 9 cases in only

- 37 -

about 4
years."
        The court entered the order and notice of
dismissal on the
same day.  Mrs. Sanders timely appealed.
## JURISDICTION
        The bankruptcy court had jurisdiction pursuant to
28 U.S.C.
§§ 1334 and 157(b)(1).  We have jurisdiction under 28
U.S.C.
§ 158.

**ISSUE**

Whether the bankruptcy court violated due process by
dismissing Mrs. Sanders' petition without notice or a
hearing.[4]

## STANDARD OF REVIEW

        "Whether an appellant's due process rights were
violated is
a question of law we review de novo."  DeLuca v. Seare
[4] Although Mrs. Sanders' statement of issues on appeal
refers to violations of the Federal Rules of
Bankruptcy Procedure and the local rules, the argument
in her opening brief focuses solely on the alleged
denial of due process. As such, we only address the
due process issues raised therein.

3

_____   _____

CLARIFICATIONS REQUESTED BY THE COURT

. 1 (In re Seare), 515 B.R. 599, 615 (9th Cir. BAP

2014) (citing

. 2   Miller v. Cardinale (In re DeVille), 280 B.R. 483, 492 (9th Cir.

. 3   BAP 2002), aff'd, 361 F.3d 539 (9th Cir. 2004)); see also HSBC

. 4   Bank USA, Nat'l Ass'n v. Blendheim (In re Blendheim), 803 F.3d

. 5   477, 497 (9th Cir. 2015) ("Whether adequate notice has been given

. 6   for the purposes of due process is a mixed question of law and

. 7   fact that we review de novo."). "De novo review requires that we

. 8   consider a matter anew, as if no decision had been made

. 9   previously." Francis v. Wallace (In re Francis), 505 B.R. 914,

. 10   917 (9th Cir. BAP 2014) (citations omitted).

_____ _____ ___ _____ ___
_____ _____

11 12 A. 13 14

. 15   court violated Mrs. Sanders' due process rights by dismissing her

. 16   petition without notice or an opportunity to be heard.

. 17   Generally speaking, a court must give sufficient notice of

. 18   its intention to dismiss a case and the

CLARIFICATIONS REQUESTED BY THE COURT

opportunity for

.19  interested parties to be heard. See Tennant v. Rojas

.20  (In re Tennant), 318 B.R. 860, 870 (9th Cir. BAP 2004) ("the

.21  concept of procedural due process requires a notice and an

.22  opportunity to be heard" (citing Muessel v. Pappalardo

.23  (In re Muessel), 292 B.R. 712, 717 (1st Cir. BAP 2003))).

.24  According to the United States Supreme Court:

.25  An elementary and fundamental requirement of due process in any proceeding which is to be accorded

.26  finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the

.27  pendency of the action and to afford them an opportunity to present their objections. The notice

.28  must be of such nature as reasonably to convey the 4

DISCUSSION

Due process generally requires notice and an opportunity to be heard.
The sole issue on appeal concerns whether the bankruptcy
__ _____ _____ _____ _____

CLARIFICATIONS REQUESTED BY THE COURT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28  1  required information, . . . and it must afford a

CLARIFICATIONS REQUESTED BY THE COURT

reasonable time for those interested to make their

. 2   appearance[.]

. 3   Mullane v. Cent. Hanover Bank

. 4   (internal citations omitted).

. 5   Section 1112(b) provides

. 6   a court may dismiss a chapter

. 7   Section 102(1) defines the phrase "after notice
and a hearing":

. 8   (1) "after notice and a hearing", or a similar
phrase -

. 9   (A) means after such notice as is appropriate in
the particular circumstances, and such opportunity

.10   for a hearing as is appropriate in the particular
circumstances; but

.
& Tr. Co., 339 U.S. 306, 314 (1950)

11

. 12   such notice is given properly and if -

.13   (i) such a hearing is not requested timely by
a party in interest; or

.
that, "after notice and a hearing,"
11 case "for cause."
(B) authorizes an act without an actual hearing if
14 15 to be commenced before such act must be done,

(ii) there is insufficient time for a hearing

- 43 -

and the court authorizes such act[.]
16

.17  "[T]he concept of notice and a hearing is flexible and

.18  depends on what is appropriate in the particular circumstance."

.19  In re Tennant, 318 B.R. at 870 (citing Great Pac. Money Markets,

.20  Inc. v. Krueger (In re Krueger), 88 B.R. 238, 241 (9th Cir. BAP

.21  1988)). A procedure may be "perfectly appropriate" if it

.22  "notifies the debtor of the deficiencies of his petition and

.23  dismisses the case sua sponte without further notice and a

.24  hearing when the debtor fails to file the required forms within a

.25  deadline." Id. at 870-71 (citing Minkes v. LaBarge

.26  (In re Minkes), 237 B.R. 476, 478-79 (8th Cir. BAP 1999)).

.27  However, we have acknowledged that the "flexible" notice and

.28  hearing requirement does not allow a bankruptcy court to 5

_____ _____ _____ __
_____ _____

CLARIFICATIONS REQUESTED BY THE COURT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28 . 1  steamroll over a party's due process rights. Id.

at 871 (citing

. 2  Dinova v. Harris (In re Dinova), 212 B.R. 437, 443-44 (2d Cir.

. 3  BAP 1997)).

_____

4 **B.** 5 6

. 7  Mrs.

. 8  did not give her any notice prior to dismissing her petition, nor

. 9  did it allow her an opportunity to present arguments to the court

. 10  or rectify any deficiencies. This was an error.

. 11  Section 102(d) requires only such notice and opportunity for

. 12  hearing as is "appropriate in the particular circumstances." But

. 13  it was not "appropriate" to dismiss Mrs. Sanders' case (by way of

. 14  a handwritten note on an unrelated form) without giving

. 15  Mrs. Sanders any semblance of prior notice or any opportunity for

. 16  a hearing.

. 17  This was not a harmless error. See Rosson v. Fitzgerald

. 18  (In re Rosson), 545 F.3d 764, 776-77 (9th Cir. 2008) ("Because

.19   there is no reason to think that, given
      appropriate notice and a

.20   hearing, Rosson would have said anything that
      could have made a

.21   difference, Rosson was not prejudiced by any
      procedural

.22   deficiency.”). Mrs. Sanders could have pointed
      out that the only

.23   reason the court gave for dismissing her case is
      invalid: no rule

.24   or statute allows for summary dismissal solely
      because a debtor

.25   and her spouse have filed a particular number of
      bankruptcy cases

.26   in a given time period. But the bankruptcy court
      did not give

.27   her a chance to say this or anything else.

.28   We acknowledge that the dismissal of Mrs.
      Sanders' 6

The court violated due process by failing to afford
Mrs. Sanders adequate notice and the right to be heard prior
to dismissing her bankruptcy petition.
In the present case, the bankruptcy court dismissed
Sanders' petition at the clerk's office filing window.
It

―― ――――――――――― ―――――――――

CLARIFICATIONS REQUESTED BY THE COURT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

. 1    chapter 11 case may have been inevitable. The

CLARIFICATIONS REQUESTED BY THE COURT

Sanders family's

. 2    record of filings and dismissals does not bode
       well. Further, it

. 3    is nearly impossible for an unrepresented debtor
       to navigate the

. 4    complexities of a chapter 11 case. Nevertheless, a
       court may not

. 5    "cut to the chase" in a manner that deprives a
       party of due

. 6    process.

. 7    Accordingly, the bankruptcy court erred when it
       dismissed

. 8    Mrs. Sanders' petition without giving her notice
       of its intent to

. 9    dismiss the case and affording her an opportunity
       to be heard on

. 10   that issue.[5]

. 11   **CONCLUSION**

. 12   For the reasons set forth above, we VACATE the
       bankruptcy

. 13   court's dismissal of Mrs. Sanders' bankruptcy
       petition and REMAND

. 14   the case to the bankruptcy court.

15

16

17

18

19

20

21

22

23

24

25

26

─────────────
[5] Arguably, the present appeal may be moot, since the 180-day bar on filing has since expired, and Mrs. Sanders may file a new petition. But the improper dismissal of this case might still prejudice Mrs. Sanders because she and her husband would have filed ten bankruptcy cases in six years. In other

27

     words, if we allow the court's order to stand, Mrs. Sanders may

28

never be able to get past the filing window.

7

CLARIFICATIONS REQUESTED BY THE COURT